CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PATRICE DAVIS,<br><br>Defendant. | Case No. 4:24-MJ-70363 MAG<br>4:26-CR-00432 HSG<br><br>**GOVERNMENT'S DETENTION MEMORANDUM**<br><br>Hearing Date: September 25, 2026<br>Hearing Time: 10:30 AM<br>Courtroom: 3, 3rd Floor<br><br>Hon. Thomas S. Hixson |

## I. INTRODUCTION

Defendant Patrice Davis is charged with possessing two separate firearms as a felon. He used one of these firearms to murder an innocent person. He used the other to rob a family at gunpoint, pistol whip the father, take property from the mother and father, point the muzzle of the firearm against the head of the parents' six-month-old baby while threatening to kill him, and then fire multiple rounds into the rear of the vehicle as they attempted to leave the scene. After being charged in Alameda County for the robbery and assault of the family, he absconded from court and removed his GPS ankle monitor before being located and arrested by federal law enforcement. When they arrested him, he possessed the Glock pistol he had used to murder the innocent victim two months earlier, and the storage unit at which

they arrested him contained additional firearms, including AR-style weapons, ammunition, a "brick" containing over 500 grams of cocaine, and a money counting machine. All of this occurred while Davis was under the strict supervision of parole following his release from prison on a 13-year sentence for residential burglary with a gang enhancement.

Davis presents both a clear flight risk and an extraordinary danger to the community. Neither danger can be mitigated, and it is imperative that he be detained pending trial.

## II. BACKGROUND

Davis is charged in two cases, each alleging that he possessed a pistol as a felon. In Case No. 4:26-cr-00432 HSG, Davis possessed on March 6, 2024, a .45 caliber Glock pistol that he had previously used to shoot and kill an innocent victim following a traffic collision on January 8, 2024.

In Case No. 4:24-mj-70363 MAG, Davis possessed on January 15, 2024, a separate .40 caliber Glock pistol that he had previously used to rob, pistol whip, and fire shots at a family traveling in their vehicle in Oakland on January 12, 2024. Davis has been in custody since his arrest on March 6, 2024.

### a. On January 8, 2024, Davis Shot and Killed a Man Following a Traffic Collision in Oakland; On March 6, 2024 Davis Was Arrested in Possession of the Firearm Used in the Murder

On January 8, 2024, two men were traveling near the intersection of 14th Avenue and Foothill Boulevard in Oakland when their vehicle collided with a Harley Davidson motorcycle. The men exited their car to check on the motorcycle rider when a second man arrived in a Porsche Panamera sedan. The driver, described as a black male with a medium build and standing approximately six-feet tall, exited the Porsche. He appeared to know the motorcycle rider, who was yelling at the two men from the car. He then pulled out a pistol and racked the slide. Seeing the pistol, the two men began to back up, and the man with the pistol began to fire shots at them. The two men ran to their vehicle and tried to drive away, but the man continued to fire shots at their vehicle. At least one bullet struck the driver in the back, and he crashed the vehicle. He died from the gunshot wound. Surveillance video showed the Porsche Panamera fleeing the scene after the shooting.

Officers arrived on scene and collected ten .45 caliber spent shell casings. At the time, Davis was wearing a GPS ankle monitor as a condition of his parole. Investigators analyzed the data from the

ankle monitor, and concluded that its movements were consistent with the movements of the Porsche. At Davis's residence, officers located a Porsche Panamera matching the appearance of the Porsche seen in surveillance footage from the January 8, 2024, homicide. Pursuant to a warrant, investigators also reviewed the contents of Davis's Instagram account, which included several photos of Davis in a Porsche Panamera. Pursuant to a warrant, investigators also analyzed the location data associated with Davis's iPhone, which showed the phone was in the area of the homicide.

On March 6, 2024, federal law enforcement agents conducted an operation to arrest Davis. Davis, who was on parole, was the subject of an arrest warrant after he had absconded from state court and removed his ankle monitor. They located Davis—who was alone—at his storage unit in San Leandro, CA. Minutes before law enforcement arrived to detain him, surveillance video showed Davis drive up to his storage unit in a Chevrolet Silverado pickup truck before accessing the unit.

After detaining Davis, agents located in the pickup truck a .45 caliber Glock pistol, loaded with 11 rounds of ammunition. Subsequent shell casing analysis indicated that the spent shell casings recovered at the scene of the January 8, 2024, murder were fired from this Glock pistol. The pistol also linked to shell casings recovered at three other shootings. One of these shootings occurred on January 9, 2024—the day after the murder—and officers also recovered shell casings that linked to a gun recovered from a man Davis was arrested with on January 15, 2024 (discussed below). The incident included a similar *modus operandi*: Three suspects got out of their vehicle, and one suspect held a firearm while telling the victims to get out of their vehicle. Fearing for their lives, the victims tried to drive around the suspects' vehicle, and the suspects then fired multiple rounds at the rear of the victims' vehicle. Cell phone location data for Davis's phone indicated it was in the area of this shooting at the time it occurred.

Further, in the storage unit, which Davis was accessing as the federal agents arrived, agents located two additional pistols and two AR-style firearms, as well as ammunition, ammunition magazines, a "brick" containing over 500 grams of cocaine, and a money counting machine:



**b. On January 12, 2024, Davis Robbed a Family at Gunpoint, Pistol-Whipped the Father, Took Property from the Mother and Father, Placed the Muzzle of His Pistol Against the Head of the Family's Six-Month-Old Baby While Threatening to Kill Him, and Fired Multiple Rounds at the Family's Vehicle; On January 15, 2024, He was Arrested in Possession of the Pistol Used in this Robbery**

On January 12, 2024, a family of five was driving in an SUV down a narrow street in Oakland when they observed a sedan driving toward them. The sedan's driver—later identified in a six-pack lineup as Davis by one of the victims—honked his horn and then exited the vehicle. Davis, armed with a pistol, approached the father, who was in the SUV's driver's seat. Davis pointed his pistol at the father and another adult family member and then struck the father in the front and back of the head with the gun while demanding their property. Fearing for his life, the father handed over his wallet. Davis then pointed the gun at the mother and demanded the adults' cell phones, and all three adults complied. The father asked Davis to stop because the couple's six-year-old and six-month-old children were in the back of the SUV. Davis reportedly stated something to the effect of, "I don't give a f---; I'll kill you and your

children." Davis then opened the rear door of the SUV, pointed the barrel of the pistol against the head of the six-month-old baby, and demanded more valuables. The adult victims told Davis that they had given him everything in their possession. Davis then fired multiple rounds into the rear of the family's SUV before running ack to his own vehicle and fleeing the scene. The incident was mostly captured on surveillance video. Officers arrived and recovered multiple spent .40 caliber shell casings.

Following this incident, an arrest warrant issued for Davis. On January 15, 2024, police officers arrested Davis at an apartment complex in Oakland. As they moved in to his arrest him, Davis tossed a pistol over a nearby fence. Another man with Davis also threw his pistol over a different fence. Both pistols were recovered. Shell casing analysis showed that the spent shell casings recovered at the scene of the January 12, 2024 robbery were fired from the .40 caliber Glock pistol Davis possessed on January 15, 2024.

## III. LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's

release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV. DAVIS PRESENTS A CLEAR FLIGHT RISK

While on parole and after being charged with robbery and shooting described above, Davis absconded from court in Alameda County and subsequently cut off his ankle monitor. The docket from his Alameda County case (24-cr-000609) indicates that on January 25, 2024, Davis failed to appear, a bench warrant issued, and his bail was forfeited. Neither his length of residence in the district, nor available resources, nor any other allegedly mitigating factor were sufficient to prevent his flight from prosecution. Davis is clearly a risk of flight—which requires only a showing of preponderance of the evidence—and he must be detained.

## V. DAVIS PRESENTS AN EXTRAORDINARY DANGER TO THE COMMUNITY

The United States submits that no condition or combination of conditions will protect the public should he be released from custody.

### a. The Nature and Circumstances of the Offense and the Danger Davis Poses to the Community Weigh in Favor of Detention

Davis is charged with unlawfully possessing two loaded Glock pistols. He used one to murder an innocent victim in an apparent act of road rage. He used the other to rob, threaten, assault, and fire multiple rounds at a family, including two young children. He did this all while under the strict supervision of parole following a lengthy prison sentence, and while wearing a GPS ankle monitor tracking his movement. Even the most stringent conditions of release are woefully insufficient.

### b. The Weight of the Evidence Against Davis Is Overwhelming

The evidence against Davis is overwhelming. On one occasion, he was observed throwing the firearm over a fence as officers approached. In the other, he possessed the firearm in a pickup truck in which he was the sole occupant. Further, GPS ankle monitor and phone location data both connect him to the location of shootings in which this gun was fired.

### c. Davis's Criminal History and Prior Conduct Demonstrate the Danger He Poses

Davis's criminal history demonstrates an unrelenting pattern of arrests and/or convictions for an array of crimes including firearms offenses, robberies, and burglaries, which have resulted in multiple

prison sentences. Davis—who, again, was on parole at the time of the instant offense—has given the Court no reason to believe he intends now to live a law-abiding life.

## VI. CONCLUSION

For the reasons set forth above, Davis presents a clear risk of flight and an extraordinary danger to the community. The Court should therefore detain Davis pending trial.

DATED: September 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/ ______________________
JONAH P. ROSS
Assistant United States Attorney